IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MATTHEW YOUNG,<br><br>      Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>      Respondents. | Cause No. CV 13-256-M-DWM-JCL<br><br>ORDER and FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

This case comes before the Court on Petitioner Matthew Young's application for writ of habeas corpus under 28 U.S.C. § 2254. Young is a state prisoner proceeding pro se.

Young is serving a 75-year sentence based on his guilty pleas to four counts of felony sexual assault against minors. He asserts that he has newly discovered evidence showing he was not competent to assist in his defense or to enter into a plea agreement when he pled guilty in 2001 ("Claim 1"). He also asserts that he moved for a psychiatric evaluation at the State's expense, but his motion was denied ("Claim 2"). Pet. (Doc. 1) at 9-11.

The Court ordered Respondent ("the State") to respond to the petition. On May 8, 2014, the State filed a motion to dismiss and brief in support, including

1

pertinent documents from the record of the case in state court (Docs. 11, 12, 13). Young responded on June 18, 2014, Resp. (Doc. 19), and was permitted an opportunity to file a second response, Order (Doc. 21). He did so on August 4, 2014 (Doc. 22).

On January 27, 2015, the State filed the transcript of Young's change of plea hearing (Doc. 24-1). Young was given an opportunity to admit or deny the correctness of the transcript. *See* Rule 7(c), Rules Governing § 2254 Cases. He responded on February 13, 2015 (Doc. 25). As he claims he has no recollection of the hearing "due to mental health issues at that time," he neither admits nor denies the accuracy of the transcript. As there is no indication, therefore, that the transcript is not the correct one, the Court finds it is the correct one.

## I. Claim 2

On April 10, 2001, retained counsel requested public funds to obtain an evaluation of Young's ability to form the mental state required to establish criminal liability. Mot. for Examination (Doc. 11-4) at 1–2. The motion was denied because, in part, "[d]efense counsel has made no showing of the Defendant's indigency." Young was given an opportunity to resubmit his motion if he made "a preliminary showing of mental disease or defect" and also demonstrated his indigency. Order of June 21, 2001 (Doc. 11-10) at 2. By the time Young entered his guilty plea, he was represented by the Public Defender's Office, *see* Minute

Entry Sept. 4, 2001 (Doc. 11-12) at 1 para. 1, and therefore made a showing of his indigency, *see* Order of June 21, 2001, at 5-6; Case Register Report (Doc. 11-1) at 2 Entries 21-22. But he did not file another motion for an evaluation of his ability to act knowingly or purposely at the time of the offense. *See* Case Register Report, *passim*. Young's contention that "the trial Court did not instruct Young to prove or disprove his ability to pay for the evaluation himself," Resp. to Mot. (Doc. 19) at 4, is contradicted by the record.

The facts shown in the record do not give rise to an inference that Young's constitutional rights under *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985), were violated.[1] Young alleges no additional facts. This claim should be denied.

## II. Claim 1

Young claims he was not competent in 2001. Relying on *Pate v. Robinson*, 383 U.S. 375 (1966), he contends "substantial evidence of [his] incompetency was before the trial Court in 2001" but the evidence was not appropriately developed. Resp. to Mot. to Dismiss (Doc. 19) at 2-3. He also asserts that he "was jailed, waived Miranda without counsel, gave incriminating statements, was put to trial,

---

[1] Young refers to *Cooper v. Oklahoma*, 517 U.S. 348 (1996). *Cooper* held that an Oklahoma rule violated due process because it permitted a defendant to be tried, convicted, and sentenced even if he was more likely than not incompetent. The Court did not alter the rule that "a State may presume that the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence." *Cooper*, 517 U.S. at 355 (citing and distinguishing *Medina v. California*, 505 U.S. 437, 449 (1992)). In effect, *Cooper* reaffirmed *Medina*.

3

plead guilty, was sentenced and imprisoned for over fifteen (15) years while [he] was more likely than not incompetent in violation of [his] Fourteenth Amendment due process rights under the United States Constitution." *Id.* at 3.

Based on these two allegations in response to the motion to dismiss, the Court understands Young to raise two separate claims in Claim 1:

(A) Young contends that he raised meaningful evidence of incompetency in 2001, but he was prevented from developing that evidence, so that the burden shifts to the State, in federal habeas, to prove that Young was competent at the time of trial in 2001. *See Pate*, 383 U.S. at 385, 387.

(B) Young contends that he was, in fact, incompetent at the time of the underlying criminal proceedings against him. As to this claim, Young has the burden of proving, by a preponderance of the evidence, that he was not competent to stand trial in 2001.

*See generally James v. Singletary*, 957 F.2d 1562, 1570-72 (11th Cir. 1992), *cited in* Resp. to Mot. to Dismiss at 18.

**A. Claim 1A**

Contrary to Young's belief, *see* Second Resp. (Doc. 22) at 2, nothing in the record of the proceedings in state court called Young's *competence* into question.

Under Montana law, evidence of a mental disease or defect may be relevant to one or more of three distinct considerations. It may be relevant to a defendant's competence; it may be a relevant defense to criminal liability; or it may be a factor mitigating the defendant's responsibility for a crime of which he is guilty. *See*

Mont. Code Ann. § 46-14-101(1) (1999).[2]

"Competency" addresses the defendant's fitness to proceed, that is, his ability, at the time of the proceedings against him, to consult with counsel and to rationally and factually understand the proceedings. *See Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); Mont. Code Ann. §§ 46-14-101(1)(a)(i), -103. An incompetent defendant may be guilty or not guilty; no one can say, because trial cannot proceed at all. All of Young's current claims concern his competence.

As a defense to criminal liability, Montana permits evidence of mental disease or defect to show the defendant was not able to form the mental state required to commit the crime – that is, to show the defendant was not capable of acting "knowingly" or "purposely." Mont. Code Ann. §§ 45-2-101(34), (64); 46-14-101(1)(a)(ii), -102. A defendant who is not able to form the requisite mental state is not guilty of the crime. *Id.* § -214(1). Finally, evidence of a mental disease or defect mitigating a defendant's responsibility for the crime may be considered at sentencing, but it is not relevant at trial. *Id.* §§ -101(1)(b), -311.

The trial court's omnibus hearing memorandum reflects the distinction

---

[2] "Insanity," under Montana law, is not a recognized defense to a crime. *See generally State v. Byers*, 861 P.2d 860 (Mont. 1993). Federal law does not require that the defense must be made available in a form other than that provided by Montana law. *See Clark v. Arizona*, 548 U.S. 735, 779 (2006).

5

between competence, on the one hand, and defense to or mitigation of criminal liability, on the other hand, by separating the question of the defendant's fitness to proceed, *see* Omnibus Hr'g Mem. (Doc. 22-1) at 1 ¶ II, from defenses, *see id.* at 3 ¶ VI(1). The defense motion for a mental evaluation did not address Young's fitness to proceed. It addressed only a defense, just as the omnibus hearing memorandum projected. In the context of Young's case, the prospect of using evidence of a mental disease or defect to defend against Young's criminal liability was consistent with the other defense listed in the memorandum: "compulsion/not a voluntary act." *Id.* at 3 ¶ VI(1) (citing Mont. Code Ann. §§ 45-2-202, 46-15-323). The memorandum does not support Young's claim that the trial court in 2001 was presented with "substantial evidence" that he might be incompetent to proceed to trial.

"A competency determination is necessary only when a court has reason to doubt the defendant's competence." *Godinez v. Moran*, 509 U.S. 389, 402 n.13 (1998). Neither defense counsel nor the trial court actually raised any question regarding Young's fitness to proceed. Thus, the question is whether Young's competency was so obviously a matter of concern that it was unreasonable and unconstitutional for the trial court to fail to question it.

The transcripts of the change of plea and sentencing hearings do not remotely suggest a reason to question Young's competence to proceed. *See*

*generally* Change of Plea Tr. (Doc. 24-1), *passim*. At sentencing, the mother of one of Young's victims testified Young "seemed like a real responsible person," "a really decent person," and "somebody that cared about little kids." Sentencing Tr. (Doc. 11-14) at 13:19-14:3. The detective who interviewed Young testified at sentencing that Young said "he knew it was wrong and . . . knew it was against the law." *Id.* at 29:2-7. When the detective asked Young how he chose his victims:

> Young said that, quote, You pick the kids. I can't explain it. You key in on something. You choose that child. You do the grooming process and see where you can get.

*Id.* at 28:22-29:1.

Other materials submitted at sentencing showed the following. Based on Young's commission, at the age of 15, of felony sexual assault against a minor, Young had a treatment history with a qualified clinical psychologist, Dr. Michael Scolatti. Young was admitted to an adult group for therapeutic purposes because of his maturity and intelligence. He attended treatment with Dr. Scolatti for four years. Dr. Scolatti stated and others testified that Young did not complete the treatment program. Presentence Report (Doc. 13-1) at 6; Sentencing Tr. at 108:1-18. Young claimed he participated in it beyond the court-ordered period. Presentence Report at 6. At any rate, he stopped participating in treatment when he was 19, about six years before his sentencing on the 2001 offense. Presentence Report at 5-6 (Doc. 13-1 at 5-6).

7

In connection with the 2001 offense, Young underwent a psychosexual evaluation with a licensed clinical social worker, Mike English. English recommended "a thorough psychological work up" to provide a more "definitive diagnostic picture" and to "recommend the most effective treatment plan," "with a psychiatric work up also done to determine if medication is in order." English Evaluation at 10 (Doc. 13-2 at 21). English noted that he administered some psychological tests that were interpreted by Dr. Paul Moomaw, Ph. D. *Id.* at 4. Dr. Moomaw reported that "Mr. Young's scores on all psychological tests were extremely elevated" and that, if the scores were reliable indices of Young's actual psychological state, "his behavior would have been noticeably disturbed for many years" in ways that would have "come to the attention of friends, family, employers, etc." Dr. Moomaw concluded, "If this is not the case, the possibility of malingering must be considered, especially as Mr. Young faced unresolved criminal charges at the time of testing." *Id.*

Young submitted an articulate, detailed, and insightful written statement to the probation officer who prepared the presentence report in 2001. Statement at 1-3 (Doc. 13-1 at 12-14); *see also* Presentence Investigation General Health Questions at 1-2 (Doc. 13-1 at 10-11). At sentencing, defense counsel mentioned both a 75- to 80-page autobiography Young had written for the probation officer and Young's statement of responsibility to the sentencing court: "I didn't write

8

that for him. In fact, except for adding or taking away a couple of commas, I didn't edit that in any way, shape, or form. . . . And those words came from the heart." Sentencing Tr. at 134:9-21. Young's own comments at sentencing were similarly articulate. In fact, they were almost surgical in the precision with which they distinguished between Young's conception of his true nature and the bad acts occasioned by his sickness. *Id.* at 137:25-143:11.

Nothing in the state court record gave defense counsel or the trial court any reason to question Young's ability rationally and factually to understand the proceedings against him or his ability to assist in his own defense. For that reason, this case stands in sharp contrast to cases such as *Maxwell v. Roe*, 606 F.3d 561, 565-67 (9th Cir. 2010), where both the petitioner's behavior and his counsel called his competence into question, and *Odle v. Woodford*, 238 F.3d 1084, 1087-(9th Cir. 2001), where the trial judge "had before him a comprehensive record" and a "large body of clinical evidence" documenting the petitioner's bizarre out-of-court behavior and extensive history of organic brain damage and in-patient psychiatric treatment. Claim 1A should be denied.

**B. Claim 1B**

As to Young's substantive claim that he was, in fact, incompetent at the time of the proceedings in the trial court in 2001, the Court has carefully considered the evidence he proffers: Dr. Athey's 2011 report. Dr. Athey concluded

9

that Young "exhibited sufficient compromises in his functioning that reasonable suspicion should have been raised as to his competency to assist in defense at the time of the plea bargain. However, the more comprehensive evaluation that could have identified this at that time was not carried out then." Athey Report at 11 (Doc. 13-2 at 48).[3] Dr. Athey explains an attorney asked him to "review my evaluation findings [of 2005] with a particular view as to whether there were likely indications that the Defendant evidenced psychological factors that should have warranted assessment of his competence to assist his defense attorney at the time prior to plea bargaining and trial." *Id.* at 1-2. But he responds to this question by applying his professional expertise to a comparison of Dr. Scolatti's report in 1991 and English's report of October 22, 2001, before sentencing in the underlying state criminal case. Dr. Athey concludes that "there were clearly mental health issues warranting *supplemental* full mental health *evaluation*." *Id.* at 1 (emphases added); *see also id*. at 2-10. English's conclusion was, similarly, that a

---

[3] It is not clear what Dr. Athey means by "this": compromises in Young's functioning, or reasonable suspicion of such compromise, or need for further evaluation? It also is not clear whether Dr. Athey believes that a lawyer – such as defense counsel or the trial court – or, instead, a mental health professional should have formed reasonable suspicion of Young's incompetence. Dr. Athey also does not explain what he means by "reasonable suspicion;" in the legal vocabulary, reasonable suspicion is a threshold of proof falling short of a preponderance of the evidence standard and even probable cause. Finally, it is possible that Dr. Athey's conclusion, in effect, endorses Dr. Moomaw's point – i.e., that if Young's functioning was really as seriously compromised as some of his testing scores indicated, it would have been obvious even to lay people interacting with Young on a daily basis that something was wrong with him. But Dr. Athey was not there. Defense counsel, the trial court, Mr. English, Young's own family members, a detective, and the parents of the victims who testified at sentencing were there. None of them suggested Young's behavior was "noticeably disturbed."

fuller assessment was warranted. English Report at 10 Recommendation No. 5 (Doc. 13-2 at 21); Sentencing Tr. at 101:20-102:21, 105:17-107:25, 111:22-112:4.

At best, Dr. Athey concludes that a mental health professional who did more testing in 2001 might eventually have formed the opinion that Young was not competent to proceed. Dr. Athey does not opine that Young was not competent to proceed in 2001. Nor does his report support an inference, on a preponderance or even on a reasonable suspicion standard, that Young was not competent to proceed in 2001.

Similarly, Young's mother's double-hearsay report to a mental health ombudsman in 2006, *see* Ex. 20 (Doc. 25-2 at 18-19), and what appears to be a letter or statement of concern prepared for a legislative hearing, *see* Ex. 20 (Doc. 25-2 at 20-23), do not support reasonable suspicion that Young was incompetent in 2001. There is no reason to question the representation that Young now has mental health issues that require treatment or that prison life has an impact on mental health issues. But mental health issues do not necessarily make a person incompetent to stand trial.

The record before the Court contains no reason to suspect that Young was incompetent at the time of the proceedings in 2001, much less that he could not prove that fact by a preponderance of the evidence. On the contrary, the record demonstrates that it did not even occur to anyone to question Young's competence

at the time he pled guilty and was sentenced. Claim 1B should also be denied.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Young presents a claim that he actually was not competent to understand the proceedings against him in 2001 (Claim 1B), that he presented sufficient evidence of his incompetence to confer a constitutional duty on the trial court to inquire further (Claim 1A), and that, although he was indigent, he was deprived of sufficient funds to obtain a psychological evaluation that likely would have established his inability to proceed (Claim 2). But all of these claims are contradicted by the record of the proceedings as they actually transpired. Claims 1A and 2 are flatly contradicted by the record. Claim 1B presents a closer question, but Young's proffered evidence that he was incompetent in 2001

12

suggests, at most, that a mental health professional who did additional testing in 2001 might eventually have reached a conclusion that Young was incompetent to proceed. Even viewed in the light most favorable to him, the evidence Young has provided does not suggest he might now be able to prove, by a preponderance of the evidence, that he was not competent in 2001.

The issues are not adequate to encourage further proceedings. A certificate of appealability should be denied as to all issues.

## IV. Sealed Document

Young asked the Clerk to file under seal a letter sent to Young by his mother. Unlike the presentence report and the mental-health evaluations conducted by English, Scolatti, and Athey, Exhibit 20 contains no material traditionally kept confidential. There is neither a compelling reason nor good cause to seal the exhibit. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir. 2006). It will be unsealed.

Based on the foregoing, the Court enters the following:

## ORDER

The Clerk shall unseal the document labeled "Exhibit 20" (Doc. 25-2) and make it available to remote public access.

The Court also enters the following:

**RECOMMENDATION**

1. The Petition (Doc. 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Young may object to this Findings and Recommendation within 14 days.[4] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Young must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of his case without notice to him.

DATED this 19th day of February, 2015.

                                                    */s/ Jeremiah C. Lynch*
                                                    Jeremiah C. Lynch
                                                    United States Magistrate Judge

---

[4] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.